IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Antonio Knox, | ) |
|          Plaintiff, | ) |
| | )    JURY TRIAL DEMANDED |
| v. | ) |
| Progress Rail Locomotive, Inc., d/b/a Electro-Motive Diesel, Inc., | ) |
|          Defendant. | ) |

## COMPLAINT

NOW COMES the Plaintiff, Antonio Knox, by and through his attorneys, Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., and complaining of the Defendant, Progress Rail Locomotive, Inc, d/b/a Electro-Motive Diesel, Inc. ("Progress Rail"), alleges as follows:

### JURISDICTION

1. This suit is brought and jurisdiction lies pursuant to the Americans with Disability Act of 1990, 46 U.S.C. § 12101 seq. ("the ADA").

2. All conditions precedent to jurisdiction under the ADA have occurred or been complied with.

3. A charge of employment discrimination on the basis of disability was filed by Plaintiff with the Equal Employment Opportunity Commission ("EEOC") within 300 days of Defendant's alleged employment discrimination.

4. The EEOC issued Plaintiff a Notice of Right to Sue on September 21, 2018.

5. Plaintiff filed this complaint within 90 days of receipt of EEOC's Notice of Right to Sue.

6. Venue lies properly within the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b)(1), as all of the parties reside or exist in the Northern District of Illinois, Eastern Division, and all of the events and omissions giving rise to this claim occurred in the Northern District of Illinois, Eastern Division.

## PARTIES

7. Plaintiff is a United States citizen and a resident of Downers Grove, Illinois.

8. Defendant is a Delaware corporation operating by virtue of the laws of the State of Illinois, at all times herein operated its business in McCook, Illinois, and is headquartered in Alabama.

9. Defendant is a "person" within the meaning of the ADA.

10. Defendant is engaged in an industry that affects commerce within the meaning of the ADA.

11. Defendant employs fifteen (15) or more employees and is an "employer" within the meaning of the ADA.

## FACTS

12. Plaintiff began full time employment with Progress Rail's predecessor, Electro-Motive Diesel, Inc., on or about June 6, 2005, at its facility located at 9501 W. 55th St., McCook, Illinois, and was on the payroll continuously thereafter until he was fired on April 30, 2013.

13. Plaintiff's job title with Defendant was Quality Assurance Inspector.

14. At all relevant times, Plaintiff's suffered and suffers from asthma ("disability") which is a disability under the ADA Amendments Act of 2008 ("ADAAA").

15. Plaintiff's disability limits his ability to perform manual tasks, work, sleep, care for himself, care for his family, and/or perform household activities.

16. Plaintiff's disability affects the operation of major bodily functions, including but not limited to respiratory and circulatory functions.

17. A rapid heartbeat, chest discomfort and/or shortness of breath are or can be symptoms of asthma.

18. Defendant was aware that Plaintiff was disabled.

19. At all relevant times, Defendant had a no-fault attendance policy.

20. Under Defendant's no-fault attendance policy, an employee who was absent, tardy or left work early ("triggering events") for any reason was assessed a point or half a point for each such occurrence.

21. Exceptions to the no-fault attendance policy included vacation, holidays, FMLA leave, and jury duty, among other things.

22. The no-fault attendance policy had no exception for triggering events caused by an ADA disability.

23. The no-fault attendance policy called for progressive discipline as points reached certain levels, including the employee being issued a "Final Written Warning Regarding Attendance" when the employee accumulated 10 points.

24. If an employee accumulated 12 points in one year under Defendant's no-fault attendance policy, the policy provided that the employee would be terminated.

25. After one year had passed since a point had been assessed, that point would be deducted from the employee's total.

26. On April 1, 2013, Plaintiff had accumulated 9 points under Defendant's no-fault attendance policy.

27. On April 2, 2013, Plaintiff experienced a rapid heartbeat, chest discomfort and/or shortness of breath while at work ("Medical Condition").

28. On April 2, 2013, Plaintiff advised his supervisor that Plaintiff was concerned he was having a heart attack or other cardiac problem.

29. On April 2, 2013, Plaintiff's supervisor sent him to Defendant's medical office in the plant ("the Medical Department").

30. On April 2, 2013, Defendant's medical staff examined Plaintiff and advised him that the cause of Medical Condition could not be determined.

31. On April 2, 2013, Employer sent Plaintiff home for the remainder of the day.

32. On April 4, 2013, Plaintiff again experienced the Medical Condition.

33. On April 4, 2013, Plaintiff's supervisor sent him to the Medical Department.

34. On April 4, 2013, a nurse in the Medical Department recommended to Plaintiff that he go to a hospital emergency room.

35. On April 4, 2013, Plaintiff was sent home for the remainder of the day.

36. On April 4, 2013, Plaintiff went to a hospital emergency room and, after being examined, was advised that the cause of Medical Condition could not be determined.

37. On April 5, 2013, Plaintiff called in sick due to the Medical Condition.

38. Plaintiff was assessed one point for his "absence" on April 5, 2013, which gave Plaintiff a total of 10 points.

39. Defendant did not follow the progressive discipline set forth in its no-fault attendance policy in that it failed to issue the "Final Written Warning Regarding Attendance" when Plaintiff accumulated his 10th point as a result of his absence on April 5, 2013.

40. On April 8, 2013, Plaintiff experienced the Medical Condition while at work.

41. On April 8, 2013, Plaintiff was sent to the Medical Department.

42. On April 8, 2013, a nurse in the Medical Department told Plaintiff he was being sent home and that he must have a doctor's note before he could return to work.

43. After leaving Defendant's premises on April 8, 2013, Plaintiff's identification badge was deactivated.

44. After his badge was deactivated, Plaintiff could not have entered the building in which he worked until his badge was reactivated.

45. On April 8, 2013, Plaintiff made an appointment with his cardiologist's office for April 9, 2013.

46. On April 9, 2013, Plaintiff called in sick due to the Medical Condition.

47. On April 9, 2013, Plaintiff was examined by a resident in his cardiologist's office.

48. Plaintiff was assessed one point for his "absence" on April 9, 2013, which gave Plaintiff a total of 11 points.

49. On April 10, 2013, pursuant to the Medical Department's instruction, Plaintiff called in sick due to the Medical Condition.

50. On April 10, 2013, Plaintiff was examined by his cardiologist who released Plaintiff to return to work on April 11, 2013.

51. On April 10, 2013, Plaintiff's cardiologist instructed him to wear a heart monitor at all times for 30 days and Plaintiff began wearing a heart monitor at that time.

52. Plaintiff was assessed one point for his "absence" on April 10, 2013, which gave him a total of 12 points.

53. On April 11, 2013, Plaintiff returned to work while wearing the heart monitor.

54. When Plaintiff returned to work on April 11, 2013, he was at first unable to enter the building in which he worked because his badge had been deactivated.

55. On April 11, 2013, while wearing the heart monitor, Plaintiff presented a doctor's note to the Medical Department indicating he was released to return.

56. On April 11, 2013, the Medical Department cleared Plaintiff to work.

57. On April 11, 2013, Plaintiff's supervisor accepted him back to work.

58. On April 11, 2013, Plaintiff resumed working while wearing the heart monitor.

59. On April 27, 2013, Defendant began an investigation regarding Plaintiff's "absences" and accumulation of 12 points under the no-fault attendance policy.

60. On April 30, 2013, Plaintiff was fired.

61. Defendant informed Plaintiff the reason he was being fired was that Plaintiff had accumulated 12 points or more under Defendant's no-fault attendance policy.

62. Despite Plaintiff's obvious need for an accommodation resulting from his disability and the Medical Condition, Defendant did not ask Plaintiff if he needed an accommodation.

63. Despite being aware of Plaintiff's disability and the Medical Condition, Defendant did not engage in the interactive process with Plaintiff.

64. Despite Plaintiff's obvious need for the accommodation of leave without points being assessed under Defendant's no-fault attendance policy, Defendant assessed points against Plaintiff on April 5, April 9 and April 10, 2013.

65. Defendant did not advise Plaintiff that if he called in sick on April 5, April 9 and/or April 10, 2013, those absences would lead to the assessment of points under Defendant's no-fault attendance policy.

66. On April 8, 2013, upon sending Plaintiff home with the instruction not to return without a doctor's note, Defendant did not advise Plaintiff that if he did not come into work on April 9, 2013 and April 10, 2013, that he would be given 1 point for each day which would give him a total of 12 points and subject him to termination.

67. The rapid heartbeat, chest discomfort and/or shortness of breath Plaintiff experienced were symptoms of Plaintiff's disability.

68. Defendant's no-fault attendance policy violated the ADA in that it penalized employees who took time off work due to an ADA disability.

69. But for Defendant's no-fault attendance policy, Plaintiff would not have been fired.

70. Despite his disability, Plaintiff satisfactorily performed his job duties.

71. Due to his asthma and rapid heartbeat, chest discomfort and/or shortness of breath while at work, the Defendant regarded Plaintiff as being disabled.

72. Defendant's proffered reason for Plaintiff's termination is a mere pretext for discrimination.

## COUNT I
## EMPLOYMENT DISCRIMINATION ON THE
## BASIS OF DISABILITY AND FAILURE TO ACCOMODATE

73. Plaintiff repeats and reiterates each and every allegation in paragraphs 1 through 72 as if fully set forth herein.

74. While Plaintiff worked for Defendant, Defendant subjected Plaintiff to discrimination due to his disability, including but not limited to:

    a. Failing to accommodate his disability; and

    b. Firing Plaintiff.

75. Plaintiff asserts that Defendant's given reason for taking adverse employment actions against Plaintiff and its failure to accommodate Plaintiff was a mere pretext for discriminating against Plaintiff based on his disability.

76. Defendant was wanton, reckless, and intentional in subjecting Plaintiff to discrimination in failing to accommodate his disability and penalizing Plaintiff for having a disability.

77. In failing to protect Plaintiff from discrimination due to Plaintiff's disability and failing to accommodate his disability, Defendant acted with malice or reckless indifference to the federally protected rights set out under 29 C.F.R. § 1615.130 and the ADA.

78. Defendant violated 29 C.F.R. § 1615.130 and the ADA by allowing discrimination due to Plaintiff's disability to exist in the workplace and failing to accommodate his disability.

79. Plaintiff's disability was a determining factor in the discrimination and failure to accommodate his disability that Plaintiff experienced; but for Plaintiff's disability, he would not have been discriminated against.

80. As a direct and proximate result of Defendant subjecting Plaintiff to discrimination due to his disability and failing to accommodate his disability, Plaintiff has suffered economic losses, including a loss of wages, benefits, and employment opportunities.

81. As a direct and proximate result of Defendant subjecting Plaintiff to discrimination due to his disability and failing to accommodate his disability, Defendant has caused, continues

to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff prays for the following relief:

a. Direct Defendant to re-employ Plaintiff;

b. Direct Defendant to reasonably accommodate Plaintiff's disability;

c. Grant Plaintiff appropriate injunctive relief, back pay and lost benefits, front pay and future benefits, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, court costs, litigation expenses, reasonable attorney fees and expert witness fees;

d. Grant Plaintiff damages for embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and emotional distress; and

e. Any and all other relief just and proper in the premises.

## COUNT II
## EMPLOYMENT DISCRIMINATION ON THE BASIS OF BEING REGARDED AS DISABLED

82. Plaintiff repeats and reiterates each and every allegation in paragraphs 1 through 72 as if fully set forth herein.

83. Defendant regarded Plaintiff as being disabled due to Plaintiff's asthma and rapid heartbeat, chest discomfort and/or shortness of breath while at work.

84. While Plaintiff worked for Defendant, Defendant subjected Plaintiff to discrimination due to the disability Defendant regarded Plaintiff as having, including but not limited to:

a. Assessing points for absences associated with Plaintiff's perceived disability; and

      b. Firing Plaintiff.

85. Other similarly-situated, non-protected employees were treated better.

86. Plaintiff asserts that Defendant's given reason for discriminating against Plaintiff due to his perceived disability was a mere pretext for discriminating against Plaintiff based on his perceived disability.

87. Defendant was wanton, reckless, and intentional in subjecting Plaintiff to discrimination in the following ways:

      a. In failing to protect Plaintiff from discrimination due to the his perceived disability; and

      b. In showing preferential treatment by not subjecting non-protected employees to discrimination due to a perceived disability.

88. In failing to protect Plaintiff from discrimination due to Plaintiff's perceived disability, Defendant acted with malice or reckless indifference to the federally protected rights set out under 29 C.F.R. § 1615.130 and the ADA.

89. Defendant violated 29 C.F.R. § 1615.130 and the ADA by allowing discrimination due to Plaintiff's perceived disability to exist in the workplace.

90. Plaintiff's perceived disability was a determining factor in the discrimination that Plaintiff experienced; but for Plaintiff's perceived disability, he would not have been discriminated against.

91. As a direct and proximate result of Defendant subjecting Plaintiff to discrimination due to his perceived disability, Plaintiff has suffered economic losses, including a loss of wages, benefits, and employment opportunities.

92. As a direct and proximate result of Defendant subjecting Plaintiff to discrimination due to his perceived disability, Defendant has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff prays for the following relief:

a. Direct Defendant to re-employ Plaintiff;

b. Grant Plaintiff appropriate injunctive relief, back pay and lost benefits, front pay and future benefits, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, court costs, litigation expenses, reasonable attorney fees and expert witness fees;

c. Grant Plaintiff damages for embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, and emotional distress; and

d. Any and all other relief just and proper in the premises.

Respectfully submitted,

/s/Steven A. Wade
Attorney for Plaintiff

## JURY DEMAND

Plaintiff demands that this case be tried by a jury.

/s/Steven A. Wade
Attorney for Plaintiff

Steven A. Wade
ANESI, OZMON, RODIN, NOVAK & KOHEN, LTD.
161 North Clark Street, #2100
Chicago, IL 60601
312-372-3822
swade@anesilaw.com
#6271068